16-3848-cr
*United States v. Larson*

# In the
# United States Court of Appeals
## for the Second Circuit

———————

AUGUST TERM 2017

No. 16-3848-cr

UNITED STATES OF AMERICA,
*Appellee,*

v.

GERALD E. BOVE,
*Defendant-Appellant,*

CARL A. LARSON, MICHAEL J. CAGGIANO, JEFFREY C. LENNON, GERALD
H. FRANZ, JR., JAMES L. MINTER, III, JEFFREY A. PETERSON, KENNETH
EDBAUER, GEORGE DEWALD, MICHAEL J. EDDY, THOMAS FREEDENBERG,
MARK N. KIRSCH,
*Defendants.[*]*

———————

[*] The Clerk of Court is directed to amend the caption to read as set forth above.

---

On Appeal from the United States District Court
for the Western District of New York

---

ARGUED: DECEMBER 6, 2017
DECIDED: APRIL 26, 2018

---

Before: CABRANES, LIVINGSTON, and CARNEY, *Circuit Judges*.

---

The question in this case is whether the United States District Court for the Western District of New York (William M. Skretny, *Judge*) lawfully denied Defendant-Appellant's motion for attorney's fees and other litigation expenses pursuant to the Hyde Amendment of 1997. We answer the question in the affirmative and therefore **AFFIRM** the District Court's Decision and Order of November 7, 2016.

---

MARY E. FLEMING, Assistant United States Attorney (*for* James P. Kennedy, Jr., Acting United States Attorney), United States Attorney's Office, Buffalo, NY, *for Appellee*.

MARK J. MAHONEY, Harrington & Mahoney, Buffalo, NY, *for Defendant-Appellant.*

JOSÉ A. CABRANES, *Circuit Judge*:

The question in this case is whether the United States District Court for the Western District of New York (William M. Skretny, *Judge*) lawfully denied Defendant-Appellant's motion for attorney's fees and other litigation expenses pursuant to the Hyde Amendment of 1997. We answer the question in the affirmative and therefore **AFFIRM** the District Court's Decision and Order of November 7, 2016.

## I. BACKGROUND

Defendant-Appellant Gerald E. Bove ("Bove") appeals the District Court's Decision and Order of November 7, 2016 denying his application for reimbursement of attorney's fees and other litigation expenses pursuant to the Hyde Amendment. Bove submitted his application after being acquitted by a jury of one count of attempted Hobbs Act extortion and one count of Hobbs Act extortion conspiracy in violation of 18 U.S.C. § 1951(a).

3

## II. DISCUSSION

### A. Standard of Review

Our Circuit has not yet decided the standard of review for Hyde Amendment appeals. Virtually all other circuits have held that the applicable standard is "abuse of discretion."[1]

We join our sister circuits in holding that the standard of review applicable to the appeal of a district court's denial of a defendant's application for attorney's fees and other litigation expenses pursuant to the Hyde Amendment is indeed abuse of discretion. We do so for the reasons given by the Fifth Circuit in *United States v. Truesdale*, 211 F.3d 898, 905–06 (5th Cir. 2000).

---

[1] *See United States v. Terzakis*, 854 F.3d 951, 953 (7th Cir. 2017); *United States v. Manzo*, 712 F.3d 805, 809-10 (3d Cir. 2013) (adopting the abuse-of-discretion standard for the Third Circuit and citing Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Eleventh, and D.C. Circuit authorities); *United States v. Knott*, 256 F.3d 20, 36 (1st Cir. 2001) (applying the abuse-of-discretion standard *pace* Bove's assertion that *Knott* "clearly takes a *de novo* approach," Reply Br. Def.-Appellant 16). We recall that "abuse of discretion" is a nonpejorative term of art; it implies no misconduct on the part of the district court. *See Dinler v. City of New York (In re City of New York)*, 607 F.3d 923, 943 n.21 (2d Cir. 2010). The term simply describes the circumstance in which "a district court base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *United States v. Ghailani*, 733 F.3d 29, 44 (2d Cir. 2013) (alteration in original) (internal quotation marks omitted).

## B. Merits

### 1. Law

The Hyde Amendment provides that a district court "may award to a prevailing [criminal defendant] . . . a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust."[2] Hyde Amendment awards "shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code."[3]

To construe the Hyde Amendment properly, we consider the ordinary meaning in context of "vexatious," "frivolous," and "in bad faith."[4] We can look to the standard dictionaries for general orientation.[5]

---

[2] Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes).

[3] *Id.* The statute's mention of "the procedures and limitations" of 28 U.S.C. § 2412 refers to the current version of the Equal Access to Justice Act, Pub. L. No. 96-481, 94 Stat. 2321, 2325. For discussion of some of these procedures and limitations, see *United States v. True*, 250 F.3d 410, 419–22 (6th Cir. 2001).

[4] *See Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning."); *see also Hayden v. Pataki*, 449 F.3d 305, 314–15 (2d Cir. 2006) (en banc).

[5] *See, e.g., Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566–68 (2012) (reviewing dictionaries in use at the time of the enactment of a statute to help

- *Vexatious*: In a legal context, "vexatious" is used to describe an action "instituted without sufficient grounds for the purpose of causing trouble or annoyance to the defendant."[6]

- *Frivolous*: The word "frivolous," used to describe pleadings, is defined as "[m]anifestly insufficient or futile"[7]—in other words, obviously lacking a "basis in law or fact."[8]

- *In bad faith*: An act is "in bad faith" if it is intentionally deceptive or dishonest. The *Oxford English Dictionary*

---

determine the ordinary meaning of a statutory term); *United States v. Connolly*, 552 F.3d 86, 90 & n.3, 92 (2d Cir. 2008) (same). For helpful cautionary advice about the use of dictionaries in statutory interpretation, see also *United States v. Costello*, 666 F.3d 1040, 1043–44 (7th Cir. 2012).

[6] *Vexatious*, *Oxford English Dictionary* (2d ed. 1989); *see also Vexatious*, *Webster's Third New International Dictionary* (1961) ("lacking justification and intended to harass").

[7] *Frivolous*, *Oxford English Dictionary*, *supra*.

[8] *Frivolous*, *Webster's Third New International Dictionary*, *supra*. *Black's Law Dictionary* notes that "frivolous" also has a connotation of subjectivity. It defines a "frivolous claim" as "[a] claim that has no legal basis or merit, esp. one brought for an unreasonable purpose such as harassment." *Frivolous claim*, *Black's Law Dictionary* (10th ed. 2014).

refers to "faithlessness" and "treachery" in defining the term.[9]

These words are all used in the Hyde Amendment to qualify another term: "the position of the United States." We understand "position" to mean here the government's general litigation stance: its reasons for bringing a prosecution, its characterization of the facts, and its legal arguments.[10]

Using these definitions, we can sketch out a provisional construction of the phrase "vexatious, frivolous, or in bad faith" along the following lines.[11] For the government's position to be

---

[9] *See Bad faith*, *Black's Law Dictionary*, *supra* ("Dishonesty of belief, purpose, or motive."); *Faith*, n., *Oxford English Dictionary*, *supra* ("*bad faith*: faithlessness, treachery; intent to deceive").

[10] *Cf. Position of the United States*, *Black's Law Dictionary*, *supra* ("The legal position of the federal government in a lawsuit, esp. in a case involving the Equal Access to Justice Act."). The Hyde Amendment apparently borrowed the phrase "position of the United States" from the Equal Access to Justice Act § 204(a), 94 Stat. at 2328 (codified in relevant part as amended at 28 U.S.C. § 2412(d)(1)). *See United States v. Gilbert*, 198 F.3d 1293, 1300 (11th Cir. 1999) (explaining that the Hyde Amendment was modeled on the Equal Access to Justice Act). The phrase cannot mean precisely the same thing in both provisions, however, since in its current form the Equal Access to Justice Act defines "position of the United States" to mean both "the position taken by the United States" in a civil proceeding and "the action or failure to act by the agency upon which the civil action is based," 28 U.S.C. § 2412(d)(2)(D); neither applies exactly in a criminal prosecution.

[11] As we observed in a previous opinion interpreting the Hyde Amendment, we "need not parse the precise meaning of the words 'vexatious,' 'frivolous,' and 'in bad faith' because . . . [the defendant's] case clearly falls short

"vexatious, frivolous, or in bad faith," the prosecution must have been brought (a) to hector or intimidate the defendant on shaky factual or legal grounds (vexatious); (b) without even a reasonably arguable factual and legal basis (frivolous); or (c) with an element of intentional deceit or dishonesty (in bad faith).[12]

## 2. Analysis

Bove's principal arguments in support of his application, all of which the District Court rejected, can be summarized under three headings: (a) that the legal theory of the prosecution was clearly erroneous; (b) that the prosecution's evidence was insufficient; and (c) that the government committed misconduct.

---

of the type of abusive prosecutorial conduct that would trigger Hyde Amendment liability." *United States v. Schneider*, 395 F.3d 78, 86 (2d Cir. 2005).

[12] The legislative history of the Hyde Amendment—reviewed at length in *Gilbert*, 198 F.3d at 1299–1302—confirms that the standard for awarding attorney's fees is intentionally demanding. As originally drafted, the Hyde Amendment would have allowed an award of attorney's fees to any prevailing criminal defendant unless the government proved that its position was "substantially justified." *Id.* at 1300. A conference committee replaced this language after the original draft of the Hyde Amendment met with staunch opposition from the Department of Justice, the Clinton Administration, and some members of Congress; opponents feared that the government would have to waste resources justifying itself in court every time it lost a criminal prosecution. *Id.* at 1300–02. The conference committee also rejected proposed replacement language—which would have allowed an award of attorney's fees for a failed prosecution brought "without foundation"—out of fear that the new wording was too favorable to prevailing defendants. *See id.* at 1302.

### a. Erroneous Legal Theory

Bove argues that the government's case against him was "frivolous and vexatious"[13] because the prosecution's theory of the Hobbs Act was "contrary to clear law and [the District Court's] rulings in the same case."[14]

The Hobbs Act prescribes criminal punishment for "[w]hoever . . . obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section."[15] Extortion, under the Hobbs Act, is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."[16] In cases involving union activity, the conduct proscribed by the Hobbs Act includes the use of extortion "to exact 'wage' payments from employers in return for imposed, unwanted, superfluous and fictitious services of workers."[17]

---

[13] Br. & Special App. Def.-Appellant 33 (internal quotation marks omitted).

[14] *Id.* at 29.

[15] 18 U.S.C. § 1951(a).

[16] *Id.* § 1951(b)(2).

[17] *United States v. Enmons*, 410 U.S. 396, 400 (1973) (internal quotation marks omitted).

The government's unsuccessful prosecution of Bove relied on a novel theory of the Hobbs Act, derived mainly from language in *United States v. Mulder*.[18] According to this theory, "unwanted, superfluous and fictitious" labor includes labor that an employer wants to be performed—and that is therefore not "superfluous"—but that he wants performed by nonunion workers instead of union workers. A person can thus violate the Hobbs Act under this theory by using extortion to "replac[e] non-union workers with union workers,"[19] even when the labor at issue is not "unwanted, superfluous," or "fictitious."

The government's position cannot have been vexatious. Vexatiousness requires some wrongful, harassing purpose; nothing in the record suggests to us that prosecutors adopted the theory for the purpose of vexing or harassing Bove.

Nor was the theory so baseless as to make the government's position frivolous. No precedent had expressly adopted the government's theory. But no precedent in our Circuit definitely foreclosed the theory either. A cursory reading of this Court's opinion in *Mulder* arguably lends some support to the theory; the opinion discusses the replacement of some workers by others at the

---

[18] 273 F.3d 91 (2d Cir. 2001). *See also United States v. Kirsch*, No. 07-CR-304S (6), 2015 WL 1472122, at *3–5 (W.D.N.Y. Mar. 31, 2015) (discussing the government's theory in the case before us).

[19] *Kirsch*, 2015 WL 1472122, at *4.

10

instigation of a labor organization.[20] The essential difference between *Mulder* and this case, however, is that in *Mulder* the employer had not wanted to hire either the original workers or their replacements. None of the workers in question was performing labor that the employer actually needed performed.

Bove is admittedly correct that the District Court eventually held the government's theory to be an erroneous interpretation of the Hobbs Act. But the District Court drew this conclusion only in 2015, several years after the failed prosecution of Bove, in a decision concerning one of Bove's codefendants.[21] During the proceedings against Bove, the District Court instead considered and denied Bove's motion to dismiss the indictment on the ground that the government's theory was erroneous.[22]

We note, furthermore, the District Court's finding that the government's theory was approved both by superiors within the United States Attorney's Office for the Western District of New York and by labor racketeering experts at the Criminal Division of the United States Department of Justice.[23]

---

[20] *See* 273 F.3d at 111.

[21] *See Kirsch*, 2015 WL 1472122, at *4–5.

[22] *See United States v. Larson*, 807 F. Supp. 2d 142, 151–59 (W.D.N.Y. 2011).

[23] *See United States v. Bove*, No. 07-cr-3045, 2016 WL 6573838, at *7 (W.D.N.Y. Nov. 7, 2016). The mere fact that Justice Department officials in Buffalo and in Washington, D.C. approved the prosecution's theory is neither sufficient, since multiple lawyers in multiple cities can endorse a frivolous position, nor

Under these circumstances—no controlling precedent definitely foreclosed the government's theory, and some language in our case law arguably supported it;[24] the District Court considered and originally rejected a challenge to the theory; and the prosecution consulted with informed superiors, including with experts in the relevant area of law—the theory of prosecution cannot have made the government's position frivolous. An arguable theory is not a frivolous theory.

### b. Insufficient Evidence

Bove also argues that the government's position was in "bad faith"[25] because the prosecution's evidence was insufficient. The government's "only"[26] evidence against him, he says, was the grand jury testimony of witness Phillip Hale that contradicted Hale's earlier

---

necessary for the government to prevail in a Hyde Amendment appeal. We do not require prosecutors to solicit the views of Justice Department officials in Washington, D.C. to avoid exposing the government to Hyde Amendment liability if the prosecution does not succeed.

[24] *Cf. United States v. Adkinson*, 247 F.3d 1289, 1292 (11th Cir. 2001) (concluding that the district court had abused its discretion by denying a Hyde Amendment application in a case in which the government had prosecuted the applicant under a theory that "was *contrary to recent and controlling precedent*" (emphasis in original)).

[25] *E.g.*, Br. & Special App. Def.-Appellant 16.

[26] *Id.* at 16.

statements to investigators. According to Bove, the government thus knew or should have known that that testimony was "not credible."[27]

We held in *United States v. Schneider* that a prosecution is not vexatious, frivolous, or in bad faith simply because a witness whose testimony directly inculpates the defendant is arguably not credible.[28] This case falls under that holding. Hale's credibility was a matter for the jury. To support his claim that Hale's testimony was not credible, Bove alleged in the District Court that Hale had made two earlier statements that contradicted his grand jury testimony. The government, for its part, opposed the Hyde Amendment motion; it submitted an affidavit contesting Bove's assertions that Hale's testimony was inherently unreliable and that the testimony was the only evidence of Bove's guilt.[29] Judged in light of *Schneider*, the District Court did not "abuse its discretion" by rejecting Bove's claim on this point.[30]

---

[27] *Id.* at 17.

[28] 395 F.3d at 87.

[29] The government asserted in its affidavit that it also presented a video and the testimony of a second witness at trial, among other evidence.

[30] In any event, even if the evidence against Bove had been objectively insufficient, the government's position would not necessarily have been in bad faith, as Bove suggests. To prove bad faith, Bove would need to have shown that the government had acted dishonestly or deceptively. Presenting a losing case is not in itself an act of bad faith.

13

### c. Prosecutorial Misconduct

Bove further argues that the government's position was in "bad faith"[31] and "vexatious"[32] because of several alleged instances of prosecutorial misconduct.

One alleged instance is the government's decision not to inform the grand jury of certain of Hale's earlier statements that Bove says contradicted Hale's grand jury testimony and undermined Hale's credibility. Yet even if Hale's earlier statements were indeed exculpatory, the government had no duty to present exculpatory evidence to the grand jury.[33]

Bove also argues that the government "sandbagged" him by failing to disclose Hale's testimony until trial or until shortly before trial. We are unable to conclude, however, that the government's disclosure of the evidence in question was untimely. A district court is required to grant a defendant's motion to order disclosure of such evidence, commonly referred to as "3500 material" or "Jencks Act material," only at the close of a witness's direct examination at trial.[34] In this case, as the District Court observed, the government disclosed the evidence with which Bove says he was "sandbagged" well before

---

[31] *E.g.*, Br. & Special App. Def.-Appellant 11–12.

[32] *E.g.*, *id.* at 13.

[33] *See United States v. Williams*, 504 U.S. 36, 52–53 (1992).

[34] *See* 18 U.S.C. § 3500(b).

trial, on January 17, 2014. Hale was not scheduled to testify until the first week of February 2014.

Bove has further asserted, to support his argument of prosecutorial misconduct, that the grand jury "*expressly* rejected" the government's Hobbs Act theory.[35] Even if a grand jury were entitled to interpret statutes, we cannot find any evidence in the record to support Bove's assertion.

We conclude that the District Court did not "abuse its discretion" by rejecting Bove's assertions of prosecutorial misconduct.

### III. CONCLUSION

In summary, we hold as follows:

(1) the standard of review applicable to a denial of a Hyde Amendment application is "abuse of discretion"; and

(2) the District Court did not abuse its discretion by denying Bove's application and concluding that the position of the United States was not vexatious, frivolous, or in bad faith, since no controlling precedent foreclosed the government's

---

[35] Defendant Gerald Bove's Reply to Response: Application for Attorney's Fees and Expenses Under the Hyde Amendment (Pub.L. 105-119, Title VI, §617) at 8, *United States v. Larson*, No. 1:07-cr-00304-WMS-HBS-8 (W.D.N.Y. May 15, 2014), ECF No. 651 (emphasis in original); *see also* Br. & Special App. Def.-Appellant 28–29.

theory of prosecution and some language in our case law arguably supported it, and since Bove's other arguments against the government's case, including those not expressly addressed above, are meritless.

We therefore **AFFIRM** the District Court's Decision and Order of November 7, 2016.